UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMARI DODSON,<br><br>  Plaintiff,<br><br>  v.<br><br>DESTINY SALINAS, EMILY LAYTON, OLIVIA EDDINGTON, and WARDELL NURGEN,<br><br>  Defendants. | CAUSE NO. 3:25-CV-250-TLS-AZ |

**OPINION AND ORDER**

Jamari Dodson, a prisoner without a lawyer, filed an amended complaint. ECF 5. Under 28 U.S.C. § 1915A, the Court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Dodson, who is incarcerated at the Miami Correctional Facility (MCF), alleges his cell mate became violent on the evening of October 7, 2024, and caused a disturbance that required officers to respond with force. Specifically, his cell mate broke the glass window on his door and stuffed his foam mattress in it, which "block[ed] the view of responding officers and dispers[ed] glass fragments in the process." ECF 5 at 4. Officers arrived on the scene, and his cell mate

began "playing tug of war" with the mattress. *Id*. When the officers were able to remove the mattress, Sgt. Graham sprayed a chemical agent inside the cell. Dodson's cell mate then "covered the window with the property box lid and refused to cuff up." *Id*. Sgt. Graham "continued to spray as other officers tried to knock the property box lid out the window." *Id*. Moments later, his cell mate surrendered. This incident took place between 10:00-11:00 PM.

Dodson's cell mate was removed, but Dodson remained in the cell which was in "disarray" with "choking gas in the air and glass fragments everywhere." *Id*. Throughout the night, Dodson asked Sgt. Salinas and Ofc. Eddington to either "call hazmat to decontaminate the room of chemical agent and broken glass fragments" or let him clean it up himself, but they refused. *Id*. The following day, he asked the same of Ofc. Nurgen, Sgt. Layton, Ofc. Eddington, and Sgt. Salinas, but they again refused to assist or allow Dodson to clean his own cell.

The window on the door was replaced by maintenance workers on October 10, 2024, but they did not clean up the glass fragments. That same day at around 2:00 PM, while he was reaching for the lunch tray that Sgt. Layton had placed on the cuff port, Dodson cut his middle finger on a glass fragment, and it started to bleed. He claims the cut caused him "great severe pain," so he asked Sgt. Layton if he could go to medical. *Id*. at 6. She told him to fill out a medical request form. His dorm representative did not have any forms, so he asked Ofc. Nurgen for one, but Ofc. Nurgen simply referred him back to the dorm representative. Dodson believes his rights were violated because he didn't have access to "hydrogen peroxide, nor bandages to properly treat the wound." *Id*. On October 15, 2024, the dorm representative provided him with the medical request form, and he was seen by medical three days later. The nurse took his vital signs, evaluated his finger, and provided him with "band aids and antibiotic ointment." *Id*. at 7. She told him that if the cut "was any deeper [he] would've needed stitches." *Id*. She did not

2

charge him for the visit. Dodson has sued Sgt. Salinas, Sgt. Graham, Sgt. Layton, Ofc. Eddington, and Ofc. Nurgen for monetary damages.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quotations and citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id*. at 476–77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force can be warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Id*. Several factors are explored when determining whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *Hendrickson*, 589 F.3d at 890.

Dodson alleges Sgt. Graham sprayed chemical spray into his cell, which he describes as "torture." ECF 5 at 4. However, he admits his cell mate was causing an extreme disturbance at the time by disobeying direct orders and becoming violent. Dodson does not allege he, himself, was

3

targeted by Sgt. Graham in any way. Based on these facts, it cannot be plausibly inferred that Sgt. Graham violated the Constitution, so the claim against him will be dismissed. *See McCottrell*, 933 F.3d at 663 (explaining deference is given to officers when the use of force involves security measures taken to quell a disturbance); *Hendrickson*, 589 F.3d 887, 890 (explaining force used in a "good-faith effort to maintain or restore discipline" does not violate the Constitution; rather, only force used "maliciously and sadistically to cause harm" does).

Dodson also alleges various officers ignored his needs following the incident. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). An officer can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Id*. at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee County*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc*., 982 F.3d 451, 458 (7th Cir. 2020)); *see Rasho v.*

4

*Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615. Thus, a prison official that takes "reasonable steps" to prevent harm to a prisoner is not liable for subsequent injuries, even if the official acted negligently or did not act as quickly as possible to abate all risks. *Bagola v. Kindt*, 131 F.3d 632, 647–48 (7th Cir. 1997); *see Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (explaining as long as a prison official takes measures "reasonably calculated" to address the risk faced by an inmate, he cannot be held liable under § 1983, even though he ultimately failed to prevent the injury).

  Here, Dodson alleges he was forced to remain in a cell covered in chemical spray residue and glass—which caused him to experience a feeling of suffocation, painful burning of his eyes, and a cut finger—and that the officers refused to allow his person or his cell to be cleaned. He claims he repeatedly asked Sgt. Salinas, Ofc. Eddington, Ofc. Nurgen, and Sgt. Layton for assistance, but they either ignored his requests or specifically told him he would not be receiving any help. Although it is unclear whether Dodson had access to a sink and/or water to clean his face and body or any supplies to wipe up the cell, the Court will give him the benefit of the inferences to which he is entitled at this stage and assume he had neither. As such, he will be allowed to proceed on claims against Sgt. Salinas, Ofc. Eddington, Ofc. Nurgen, and Sgt. Layton for being deliberately indifferent to the hazardous conditions in his cell following the chemical spray incident. *See, e.g., Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005) ("While detaining an inmate for eight hours after using chemical agents *without allowing him to wash his face* amounts to the wanton infliction of pain and suffering, holding the inmate until the disturbance has clearly ended does not, nor does waiting 10 to 20 minutes before letting him wash off the spray.") (emphasis added) (internal citations omitted)); *but see Buchanan v. Pfister*,

No. 17-CV-8075, 2018 WL 4699778, at *7 (N.D. Ill. Oct. 1, 2018) ("Courts have routinely held that the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions.") (collecting cases); *Rivera v. MacAdory*, No. 96 CV 4674, 1997 WL 17811, at *3 (N.D. Ill. Jan. 16, 1997) (explaining that because plaintiff was able to wash himself after exposure, the "lingering unpleasant effects of the mace" after washing his eyes and face was not a "serious medical need").

Finally, Dodson alleges Sgt. Layton and Ofc. Nurgen were aware that he had cut his finger, was bleeding profusely, and was in "great severe" pain. ECF 5 at 6. He claims they refused to assist him in any way and refused to allow him to go to medical. There is some question as to whether the cut on his finger was objectively serious enough to trigger Eighth Amendment concerns considering the nurse later admitted he did not need stitches. Nonetheless, the Court will give Dodson the benefit of the inferences to which he is entitled at this stage and allow him to proceed on this claim. *See Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (explaining ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering").

Dodson is not proceeding in forma pauperis. Therefore, the Court will not serve the defendants pursuant to 28 U.S.C. § 1915(d). Rather, it is his obligation to serve the defendants with a copy of the complaint and this screening order as provided by Federal Rule of Civil Procedure 4.

For these reasons, the Court:

(1) DENIES AS MOOT the motions for screening (ECF 13 & ECF 14);

(2) GRANTS Jamari Dodson leave to proceed against Sergeant Destiny Salinas, Sergeant Emily Layton, Officer Olivia Eddington, and Officer Wardell Nurgen in their individual

capacities for compensatory and punitive damages for being deliberately indifferent to the hazardous conditions of his cell in the days following the chemical spray incident on October 7, 2024, in violation of the Eighth Amendment;

(3) GRANTS Jamari Dodson leave to proceed against Sergeant Emily Layton and Officer Wardell Nurgen in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his cut finger on October 10, 2024, in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Sergeant Josh Graham;

(6) DIRECTS the clerk to sign and seal summons for Sergeant Destiny Salinas, Sergeant Emily Layton, Officer Olivia Eddington, and Officer Wardell Nurgen and send them to Jamari Dodson; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sergeant Destiny Salinas, Sergeant Emily Layton, Officer Olivia Eddington, and Officer Wardell Nurgen to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 2, 2026.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT